**Thomas Forensic, LLC**
**Forensic-Psychological Consultation and Evaluation**

**Tracy A. Thomas, Ph.D., ABPP**
Board Certified Forensic Psychologist
Licensed Psychologist (IA, NE, MO)
Email: TracyThomas@ThomasForensic.com

# PSYCHOLOGICAL EVALUATION
### TREATMENT AMENABILITY AND RECOMMENDATIONS

| | |
|---|---|
| **Defendant:** | **TREMBLAY, Kyle** |
| **Case No.** | 4:21-CR-001009-001 (US District Court, Southern District of Iowa) |
| **Date of Birth:** | 05/04/1992 (age 30) |
| **Report Date:** | 10/28/2022 |
| **Evaluator:** | Tracy Thomas, Ph.D., ABPP (Forensic) |

### REFERRAL INFORMATION AND REASON FOR EVALUATION

I was initially contacted in this case by Mr. Benjamin Bergmann, counsel for Mr. Kyle Tremblay. Mr. Tremblay has pleaded guilty to Production of Child Pornography in 4:21-CR-001009-001 (US District Court, Southern District of Iowa). Mr. Bergmann requested a forensic psychological evaluation of Mr. Tremblay to provide information relevant to sentencing. Specifically, Mr. Bergmann requested information and opinions regarding the defendant's treatment needs and amenability. This report details the results of my assessment of Mr. Tremblay.

### STATEMENT OF PURPOSE AND NON-CONFIDENTIALITY

Prior to the interview for the current report, Mr. Tremblay was notified of the nature and purpose of the current evaluation. He was informed that his attorney had requested I complete a general psychological evaluation, as well as a psychosexual evaluation. Mr. Tremblay was notified of the likely content of the evaluation. He was informed that he did not have to answer questions, but that his full participation was being requested and would assist me in coming to accurate conclusions. He was informed that, subsequent to an interview with him, review of available records, his completion of any necessary physiological and psychological testing, and discussions with any relevant collateral informants, I might be asked to prepare a report and provide it to defense counsel. I explained that, if a report or testimony was requested, results of the evaluation would no longer be considered privileged. I noted that any statements

Mr. Tremblay might make in the context of the interview could be made part of a report, if requested, which would then be seen by defense counsel, the AUSA on the case, possibly the judge, and other individuals with official involvement in the proceedings. Mr. Tremblay was also notified that I am a licensed psychologist and that, as such, a mandatory reporter. After providing this notification, he was given the opportunity to ask questions about the nature or purpose of the evaluation. He verbalized understanding of the notification and agreed to participate in an interview.

## SOURCES OF INFORMATION

The current evaluation is based on the following sources of information:

1. Presentence Investigation Report (PSIR) for Mr. Tremblay, filed 10/21/2022
2. Interview of Mr. Tremblay at the Polk County Jail, 9/02/2022, 2 hours and 25 minutes
3. Psychological Testing: Minnesota Multiphasic Personality Inventory-3 (MMPI-3)
4. Psychological Testing: Child Pornography Offender Risk Tool (CPORT)

## DEFENDANT'S DESCRIPTION OF OFFENSE CYCLE AND OFFENSE BEHAVIOR

Mr. Tremblay described learning about and engaging in sexual behavior at a young age. He reported being sexually abused by an older brother (S.T.) from the ages of approximately four to nine. He reported being "sexually abused mentally" by another older brother (G.T.). He relayed that G.T. was also sexually abusing a niece (R.). G.T. reportedly "penetrated R. from behind while he made her perform oral [sex] on the defendant." Mr. Tremblay reported G.T. would "beat him" until he "submitted" to the sexual abuse.

Mr. Tremblay relayed a salient incident that occurred when he was "six or seven" years old. According to the defendant, G.T. and two cousins built a fort "made out of beds" with walls around it. R. ("4 or 5 years old" at the time), her younger brother (B.), and Mr. Tremblay were reportedly in the fort. Mr. Tremblay and R. were "fooling around [in the fort] because they'd been taught to." Unbeknownst to Mr. Tremblay and R., G.T. and the two cousins "had been watching them for an hour through holes in the wall." Mr. Tremblay and R. reportedly stopped "fooling around" when they realized they were being watched; however, G.T. and the two cousins "said they would tell if [the defendant and R.] didn't keep going." Mr. Tremblay and R. thus continued "fooling around" while the three older boys "watched and masturbated."

The defendant reported that he prefers to "stay to himself" and that he predominantly socializes only with "close friends." He described his "close friends" as people he has met online and do not live near to him. As such, his social activity is completely online. He reported that, since he was a teenager, all of his friendships and socialization has been online.

Mr. Tremblay reported having a few "girlfriends" in the past but stated those relationships never lasted longer than "a few weeks." He reported two sexual encounters in his lifetime – one which was involved sex with two women and the other that involved receiving oral sex

| | | |
|---|---|---|
| **TREMBLAY, Kyle** | Psychological and | 10/28/2022 |
| 4:21-CR-00109-001 | Treatment Recommendations | |

from a man. He reported that he would be "terrified" to ask someone out, saying that he has been rejected the few times he has attempted to ask women out.

Mr. Tremblay reported he would be "OK with" having friendships and romantic relationships with individuals of "any age." However, he reported he "feels more accepted by young people." He described feeling that he has more in common with adolescents than adults and that he is more comfortable approaching and interacting with adolescents as opposed to adults. He reported a sexual preference for "teen boys and teen girls," adding that he is not sexually attracted to individuals "nine and below." He exhibited and verbalized distress regarding his sexual attraction to adolescents, saying he wishes he were sexually attracted to and comfortable around adults. Mr. Tremblay reported using Omegle (a chat website that randomly and anonymously pairs strangers into 1:1 chat sessions) to talk with "14- and 15-year-old boys and girls." In his online interactions, he reportedly at times portrayed himself as "younger" because he "wanted someone to talk to" and believed it was more likely an adolescent would talk to him if he presented himself as younger. He described making one fake profile of "an 18- or 19-year-old 'emo kid' who looked cool and was good looking." He reported doing this in order "to get females to talk to him," noting that he knew most people would not engage with him if his profile showed his true appearance and age.

The defendant discussed with me the circumstances surrounding the offense behavior in his current conviction. He reported that he started having sexual fantasies of "kids" when he was a "teenager." He described having a "porn addiction" that started in his teenage years and continued until his arrest in his current case. He described that he initially "tried to only look up legal versions" of minor-related pornography, which included being active in 'lollicon,' websites and images (which generally involves images, stories and videos of legal adult women depicting minors in sexual situations or sexualized anime depictions of children or teenagers). He reported enjoying and being sexually aroused by the "lollicon" genre of sexual content and pornography. He reported that, for a number of years, he was satisfied using the lollicon and anime pornography related to adolescents and children.

Mr. Tremblay described himself as "stumbling across" child pornography that depicted actual children and adolescents. He reported that, when he came across this "real" child pornography, he initially attempted to avoid it but ultimately decided "Fuck it. I'm going to see it so I might as well look at it." He reported also rationalizing, "I'm going to die someday anyway." He indicated that, after he started looking at true child pornography, he struggled to stop. He relayed, "I've tried to stop many times but I just can't. I hate myself for it, I really do." He added that he wishes he were sexually attracted to adults and that he could cease being aroused by children and adolescents. He reported that he several times considered seeking therapy to try and alter his sexual arousal toward minors, but that he never pursued therapy out of fear that he would be reported for his arousal pattern and behavior. He conjectured that he might have engaged in his offense behavior, at least in part, because child-related sexual images and acts "seemed normal" given his childhood experiences with sex.

I discussed with the defendant his stated desire to not be sexually aroused to minors and his past consideration of seeking treatment to change that arousal pattern. He reiterated that he "hates" this aspect of himself and wishes there were a way to change it. I spoke with him about some of the nuances of mandatory reporting requirements for therapists and also validated his past reticence to seek treatment (even before he started viewing "real" child pornography). I talked with him about an approach to preventing child sexual abuse and exploitation, in which specially trained therapists work with individuals who are sexually attracted to children but are motivated to alter that arousal pattern. He verbalized a strong desire to participate in this type of program, indicating that he wanted to live a "normal" life and not continue to experience the shame of his sexual attraction to minors.

## RESULTS OF TESTING

Minnesota Multiphasic Personality Inventory-3 (MMPI-3)
The MMPI-3 is a measure used to provide information regarding personality, behavior, interpersonal functioning, and symptoms of psychological disorder. It includes what are called "Validity Scales." The Validity Scales measure whether an individual attended to the content of each test item and gave relevant, forthright responses. Clinical information (i.e., related to personality, psychological disorder, etc.) comes from a number of additional Scales. One such set of scales is termed the "Higher Order" scales, which capture three broad areas of clinical importance (i.e., Thought Dysfunction, Emotional/Internalizing Dysfunction, and Behavioral/Externalizing Dysfunction). There are also additional clinical scales that provide information in the domains noted above (i.e., personality, behavior, etc.). The MMPI-3 is the most recent iteration of the MMPI, with updated norms, such that an individual's responses are compared to a more recent, demographically accurate sample. This is in contrast to older versions of the MMPI, in which the test-taker's responses were interpreted based on data from a norming sample that was several decades old. MMPI-3 items were also updated to increase clarity and relevance to current society (e.g., use of technology that was not in existence when the original norms were obtained).

An individual's MMPI-3 results are evaluated using t-scores. Scale scores on the MMPI-3 have a standard deviation (SD) of 10. In general, scale scores at or above between $t=65$ and $t=75$ are considered "elevated," depending on the scale. Interpreting a test-taker's MMPI profile requires both examination of the extent of any elevations (e.g., a score of $t=66$ has a notably different meaning than $t=86$), as well as an examination of the specific types and clusters of scales that are elevated. Finally, it is important to interpret an individual's MMPI-3 results in the context of his/her overall history and current situation. Review of records and, when possible, discussion with the test taker, are important, such that an accurate MMPI interpretation can be made.

On the MMPI, Mr. Tremblay endorsed an abnormally high number of psychological problems. He also endorsed a significant number of symptoms of psychopathology that are highly unusual, even in samples of severely mentally ill individuals. Because of this response style,

which indicates endorsement of unlikely problems and experiences, the clinically relevant scales could not be interpreted (i.e., he "invalidated" the test). Without Mr. Tremblay himself explaining his response style, I cannot say with certainty why he over endorsed symptoms of psychopathology. Based on his overall presentation and statements at interview, it is my opinion that the invalidation of the MMPI was due to the combination of four factors: (1) an idiosyncratic manner of interpreting test items (i.e., his statements at interview indicated an unusual manner of thinking and understanding external events, which likely caused him to interpret test items in a manner different from the "typical" interpretation of test items, (2) his legitimate experience of odd psychological experiences (e.g., talking to "imaginary friends" and unusual sensory experiences, (3) a desire to ensure that I noted his significant level of psychological turmoil, and (4) a history of trauma, which research suggests can lead to elevations in the validity scales that assess overreporting.

It is notable that the defendant <u>did not attempt to minimize, justify, or explain his offense behavior by reporting mental health issues</u>. In fact, he denied a history of mental health diagnosis or treatment. Although he reported odd visual experiences, he did not relate them in any way to his offense behavior. Instead, he explained his offense behavior by frankly acknowledging his sexual preference for adolescents. <u>This makes it unlikely that he was attempting to feign symptoms of mental illness on the MMPI in order to provide an excuse for his behavior</u>.

## DIAGNOSTIC CONCEPTUALIZATION

Mr. Tremblay presents with a number of notable personality and psychological features. He is socially awkward, uncomfortable, and avoidant. Essentially his only social contact occurs virtually and he reports significant discomfort with in-person interaction with same-aged peers. Mr. Tremblay also presents with a high level of negative emotionality. He experiences a chronic mid-level depression that can spike into more significant depressive episodes. He is also socially and generally anxious. He lacks a strong sense of self or confidence in his identity and purpose. His withdrawal into a life of fantasy via the internet, games like Dungeons and Dragons, and "talking to imaginary friends" is consistent with his overall lack of identity, lack of ego strength, and inability to assert himself for fear of being rejected. This personality profile can be innate (i.e., the person is "born that way"), can develop in response to trauma (e.g., childhood abuse), or can be a combination of both innate characteristics and environmental experiences.

| | | |
|---|---|---|
| **TREMBLAY, Kyle** | Psychological and | 10/28/2022 |
| 4:21-CR-00109-001 | Treatment Recommendations | |

These above-described traits and behaviors are consistent with a DSM-5 diagnosis of Avoidant Personality Disorder, which is characterized as:

> A pervasive pattern of social inhibition, feelings of inadequacy, and hypersensitivity to negative evaluation, beginning by early adulthood and present in a variety of contexts, as indicated by four (or more) of the following:
>
> 1. Avoids occupational activities that involve significant interpersonal contact because of fears of criticism, disapproval, or rejection.
> 2. Is unwilling to get involved with people unless certain of being liked.
> 3. Shows restraint within intimate relationships because of the fear of being shamed or ridiculed.
> 4. Is preoccupied with being criticized or rejected in social situations.
> 5. Is inhibited in new interpersonal situations because of feelings of inadequacy.
> 6. Views self as socially inept, personally unappealing, or inferior to others.
> 7. Is unusually reluctant to take personal risks or to engage in any new activities because they may prove embarrassing.

Additionally, the defendant is appropriately diagnosed with an Other Specified Trauma- and Stressor-Related Disorder ("Other Trauma Disorder"). According to the DSM-5,

> This category applies to presentations in which symptoms characteristic of a trauma- and stressor-related disorder that cause clinically significant distress or impairment in social, occupational, or other important areas of functioning predominate but do not meet the full criteria for any of the disorders in the trauma- and stressor-related disorders diagnostic class. The other specified trauma- and stressor related disorder category is used in situations in which the clinician chooses to communicate the specific reason that the presentation does not meet criteria for any specific trauma- and stressor related disorder. This is done by recording "other specified trauma- and stressor related disorder" followed by the specific reason (e.g., "persistent complex bereavement disorder").

Mr. Tremblay presents as cynical and bitter and harbors thinly veiled anger and resentment. He is essentially angry at the world for his seemingly unfair position in life. He also experiences intermittent periods of depression and anxiety. His report of talking to "imaginary friends" and abnormal sensory experiences (e.g., seeing shadows and shapes) is not consistent with the visual hallucinations associated with a Psychotic Disorder. Instead, it is consistent with the unusual sensory experiences sometimes seen in individuals who experience trauma. Specifically, to cope with trauma and the confusion and shame surrounding it, it is not uncommon for children to develop fantasy worlds. They withdraw into these fantasy worlds as a mechanism for avoiding conscious experience of the abuse and the negative feelings accompanying it. This retreat into fantasy can border on dissociation (or involve actual

dissociation). This manner of coping becomes unconscious and, unless addressed via therapy, typically continues into adulthood. The experiences are often misinterpreted as symptoms of psychosis when, in fact, they are learned strategies for disconnecting from reality in order to protect the individual's psyche.

The combination of Mr. Tremblay's Avoidant Personality Disorder and Other Trauma Disorder causes him to vacillate between feelings of anger and resentment toward others and a wish to be like those other people. His withdrawal into fantasy life is the only way for him to experience pseudo-normalcy, given his anxiety, social awkwardness, and social rejection. That retreat into fantasy also provides him a sense of psychological safety.

Finally, Mr. Tremblay reports sexual attraction to older children and adolescents, generally in the range of 10-16 years. Sexual preference for pubescent children (i.e., individuals in the process of puberty) is referred to as "hebephilia." This is distinct from pedophilia, which involves sexual preference for prepubescent children, who are typically under the age of 11. There is debate in the psychological community as to whether hebephilia should be considered a psychological disorder. In any event, he is sexually aroused to pubescent children, has engaged in sexual behavior related to pubescent children (i.e., viewing pornography, sexual talk), and is distressed by this arousal pattern. Whether or not it constitutes an "official" diagnosis, it is a clinical problem relevant to his current situation and his treatment needs.

Notably, Mr. Tremblay's personality and behavior is consistent with one of the typical profiles seen in child sexual exploitation material ("CSEM") offenders. As described, for example, in Merdian et al. (2016)[1] one typical CSEM offender profile is the Social Exclusion and Escape offender. These individuals often have a history of childhood bullying, a strong interest in fantasy and science fiction, and enjoy second-life or third-person games. This typological grouping of CSEM offenders typically engage in illegal downloading of CSEM materials and report or present with an "addiction" to the internet. Understanding this personality, psychological, and behavioral factors surrounding Mr. Tremblay's use of CSEM is important in terms of determining and implementing an effective strategy for reducing his risk for future CSEM use.

## RISK ASSESSMENT

Mr. Tremblay's estimated risk for engaging in (1) child pornography recidivism, and (2) any sexual recidivism was assessed using the Child Pornography Offender Risk Tool (CPORT). The CPORT is a seven-item actuarial risk assessment instrument. "Actuarial" risk assessment measures utilize historical, generally static factors that have known predictive validity regarding the behavior of interest (in this case, future CSEM or general sexual offending). An individual's score on the CSEM is calculated based on the number of factors present; the more "points" or present factors, the higher the estimated risk for future problematic sexual behavior.

---

[1] Merdian, H. L., Moghaddam, N., Boer, D. P., Wilson, N., Thakker, J., Curtis, C., and Dawson, D. (2016). Fantasy-driven versus contact-driven users of child sexual exploitation material: Offender classification and implications for their risk assessment. *Sexual Abuse: A Journal of Research and Treatment, 30*(3). DOI:10.1177/1079063216641109

| | | |
|---|---|---|
| **TREMBLAY, Kyle** | Psychological and | 10/28/2022 |
| 4:21-CR-00109-001 | Treatment Recommendations | |

Mr. Tremblay received a total score of 4 on the CPORT. A score of 4 is associated with an estimated 5-year risk for any sexual recidivism of 26%. Put another way, in a group of 100 individuals scoring a 4 on the CPORT, 26 individuals would be estimated to engage in any sexual recidivism in the five years post-release from confinement. Regarding child pornography recidivism, his score of 4 is associated with a 5-year risk estimate of 20%. Developmental research for the CPORT shows that 10% of individuals in the norming samples received a score of 4. In the developmental research, 6% of individuals in the norming sample received a score higher than 4 and 84% of individuals received scores lower than 4.

### STRENGTHS, ASSETS, AND PROTECTIVE FACTORS

Mr. Tremblay presents with several factors that increase the likelihood of him engaging in treatment, benefitting from treatment, and mitigating his risk for future sexually abusive behavior. These factors include:

1. Mr. Tremblay was forthright regarding his offense behavior during the current interview; he did not minimize, justify, or attempt to obfuscate when discussing his responsibility for the harmful conduct.

2. Mr. Tremblay verbalized and gave the appearance of sincere shame and regret regarding his offense behavior.

3. Mr. Tremblay acknowledges his sexual arousal to minors. This is important, as insight and acknowledgement of problematic arousal is necessary for successful treatment.

4. Mr. Tremblay reported a desire for treatment aimed at reducing his sexual arousal toward children and adolescents. He reported wanting to seek treatment prior to his arrest; however, he did not seek therapy due to fear of being reported. During my interview with him, he expressed interest in the types of therapy that might be available to change his arousal pattern. As his sexual preference for children/adolescents is now "exposed" and he has admitted that arousal pattern, there is no longer a reason to avoid therapy.

5. Mr. Tremblay does not have a generally antisocial/criminal/psychopathic style of thinking and behaving. This is important, as individuals with these traits tend to struggle in treatment and can be more likely to reoffend. This is because antisocial/criminally oriented/ psychopathic individuals lack remorse and empathy, disregard the safety of self and others, are resistant to rules and authority, and are generally willing to break rules and hurt others to meet their own needs. The lack of these characteristics in the defendant increases the likelihood of him engaging meaningfully in treatment, benefiting from treatment, and being motivated to avoid sexually abusive behavior in the future.

| | | |
|---|---|---|
| **TREMBLAY, Kyle** | Psychological and | 10/28/2022 |
| 4:21-CR-00109-001 | Treatment Recommendations | |

### SUMMARY AND RECOMMENDATIONS

Mr. Tremblay is a 30-year-old man with a conviction for Production of Child Pornography. He was initially charged in an eight-count indictment with multiple offenses related to production, transportation, receipt, and possession of child pornography. The offense behavior underlying these charges is extensive and damaging. The offense behavior is demonstrative of significant disturbance in Mr. Tremblay's sexual arousal and preference.

At interview, the defendant was frank in acknowledging his sexual attraction to minors. He described his sexual arousal to children/adolescents as starting during his developmental period and continuing to the present. He speculated that his sexual arousal to minors could be, in some part, related to his early sexualization and sexual abuse. However, he did use his history to rationalize or minimize his deviant sexual interests or offense behavior. He reported shame and regret regarding his attraction to minors and the behavior surrounding his current offense.

Clinically, the defendant has several areas of disturbance. He meets criteria for DSM-5 diagnoses of Avoidant Personality Disorder and an Other Specified Trauma- and Stressor-Related Disorder. His psychological and personality pathology cause him to be intermittently depressed and anxious. He is socially awkward, uncomfortable, and withdrawn. At times he experiences feelings of grief and dejection at his lack of social connection. At other times his inability to connect with others results in feelings of anger, bitterness, and cynicism. The combination of this personality and psychological pathology, along with his entrenched sexual preference for children/adolescents results in an individual who is significantly disturbed and likely to struggle to successfully function emotionally, behaviorally, or interpersonally without intervention.

As assessed by the CPORT, the defendant's estimated risk for engaging in any sexual recidivism in the five years post-release from confinement is 26%. His five-year risk for child pornography recidivism is 20%. At interview he verbalized a strong desire to change his arousal pattern which, based on his specific statements and demeanor, appeared sincere. He was accepting of the fact that his behavior warranted punishment. He relayed that he hoped he would have the ability to receive treatment for his sexually deviant arousal and behavior, such that he might some day be able to have "normal" romantic and sexual relationships that did not harm others.

**TREMBLAY, Kyle**  Psychological and  10/28/2022
4:21-CR-00109-001  Treatment Recommendations

Based on my evaluation of Mr. Tremblay, the following is recommended:

1. Mr. Tremblay should complete an intensive sex offender treatment program. The formal sex offender treatment program offered through the BOP, which involves acknowledgement of offense behavior, identification of factors surrounding offense behavior, determination of strategies for mitigating risk for future sexually abusive behavior, and practicing those interventions, would be appropriate for the defendant.

2. To increase the likelihood of the defendant abstaining from harmful sexual behavior and becoming a productive member of society, therapeutic interventions aimed at his trauma history and personality pathology are recommended. In the BOP, individual "treatment" is often short-term and reserved for inmates who pose an acute risk to themselves, others, or the secure operation of the institution. However, many BOP facilities offer options for intensive group therapies targeting trauma and personality disorders. I recommend that he engage in this type of programming, as available and recommended by BOP staff at his institution.

3. Mr. Tremblay would benefit from practical life skills training. Interventions related to job skills, obtaining employment, social and relationship skills, problem-solving, and coping with stress and negative emotions would increase his chances of successful future reintegration into the community.

In sum, although Mr. Tremblay presents with sexual attraction to minors, he is distressed by this arousal pattern, has previously desired treatment, and is motivated to engage in treatment to address this issue. Unlike many "hands-on" and child pornography offenders, he has insight into his behavior, takes responsibility for it, does not distort or minimize his role in his offense behavior, and demonstrates a true desire for change.

This completes the evaluation of Mr. Kyle Tremblay.

*T. Thomas, Ph.D., ABPP*  10/28/2022
_____  _____

Tracy Thomas, Ph.D., ABPP  Date
Board Certified Forensic Psychologist
Licensed Psychologist (IA, NE, MO)